UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSHUA LOPP,

                    Petitioner,                      Civil Action No. 2:12-cv-13003
                                                             Honorable Lawrence P. Zatkoff

v.

CARMEN PALMER,

                    Respondent.

_____/


OPINION & ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING
A CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION TO PROCEED ON
APPEAL IN FORMA PAUPERIS

      This matter is before the Court on Petitioner's pro se request for habeas relief pursuant to 28 U.S.C. § 2254. Petitioner was convicted after a bench trial in the Wayne Circuit Court of assault with intent to commit armed robbery, MICH. COMP. LAWS § 750.89, and commission of a felony with a firearm. MICH. COMP. LAWS § 750.227b. Petitioner was sentenced to 15-to-40 years for the assault offense and a consecutive two years for the firearm offense. The petition raises two claims: (1) Petitioner was denied the effective assistance of counsel for failing to move to suppress identification testimony resulting from an unduly suggestive identification procedure; and (2) counsel was ineffective for filing a notice of alibi without first interviewing the witness. The Court will deny the petition because Petitioner's claims do not merit habeas relief. The Court will also deny Petitioner a certificate of appealability and deny permission to proceed in forma pauperis on appeal.

Background

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals,

which are presumed correct on habeas review pursuant to 28 U.S.C. § 2254(e)(1). *See Wagner v.*

*Smith,* 581 F.3d 410, 413 (6ᵗʰ Cir. 2009):

> Defendant's convictions arose out of three robberies that occurred on January 28, 2009. In the morning of that day, a woman was sitting in her black Dodge Magnum after dropping her daughter off at school. An armed man approached and demanded that she give him the car. The woman gave the man the keys and ran away. On the same day, after school, two students, Chenay Cornish and Artist Wright, were separately robbed after exiting the school bus. Defendant was convicted of robbing Cornish and Wright.
>
> Cornish testified at trial that she saw a man with a gun get out of a black Dodge Magnum. The man aimed the gun at her and then went through her book bag. The driver of the car ordered the armed man to put her in the car. The man refused and got back into the car; the driver then drove the car away. Cornish later identified defendant as the driver of the car.
>
> Similarly, Wright testified that as he was walking home from the bus stop, he saw a gun-wielding man get out of a black Dodge Magnum. Wright gave the gunman his book bag, coat, and cell phone. Wright looked into the car as he was being robbed because he wanted to identify the people involved. Wright subsequently identified defendant as the driver of the car.

*People v. Lopp*, No. 295662, 2011 WL 566841, at *1 (Mich. Ct. App. Feb, 17, 2011).

Following his conviction and sentence, Petitioner pursued an appeal by right in the Michigan

Court of Appeals, raising the following claims:

> I. Petitioner was denied his Michigan and United States Constitutional right to effective assistance of counsel when his trial counsel failed to file a motion to suppress the unduly suggestive lineup.
>
> II. Petitioner was denied his Michigan and United States Constitutional right to effective assistance of counsel when his trial counsel filed a notice of alibi defense without first investigating the alibi claim or speaking with the potential alibi witness.

The Michigan Court of Appeals denied Petitioner's request for an evidentiary hearing on

2

these claims, and then it rejected the claims on the merits in an unpublished opinion. *Lopp*, 2011 WL 566841, at *1, 4.

Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, raising the same claims as in the Michigan Court of Appeals. The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed. *People v. Lopp*, 804 N.W.2d 321 (Mich. 2011) (table).

Standard of Review

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Pursuant to the AEDPA, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits-

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id*. at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410-11.

3

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S.Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)(*quoting Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011)(*citing Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id*. (*citing Lockyer v. Andrade*, 538 U.S. 63, 75 (2003). Furthermore, pursuant to § 2254(d), "a habeas court must determine what arguments or theories supported or...could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Id*. "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the AEDPA, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id*. Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error

4

correction through appeal." *Id.* (*citing Jackson v. Virginia*, 443 U.S. 307, 332, n. 5 (1979))(Stevens, J., concurring in judgment)). Therefore, in order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.*, at 786-787.

Discussion

Petitioner asserts that his trial counsel was ineffective because: (1) he failed to move to suppress the identification testimony of the victims; and (2) he filed a notice of alibi defense without first interviewing the alibi witness. Both claims were reasonably rejected on the merits by the Michigan Court of Appeals, and therefore they do not merit habeas relief.

In *Strickland v. Washington*, 466 U.S. 668 (1984), the United States Supreme Court set forth a two-prong test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient. This requires showing that counsel made errors so serious that he or she was not functioning as counsel as guaranteed by the Sixth Amendment. *Strickland*, 466 U.S. at 687. Second, the petitioner must establish that counsel's deficient performance prejudiced the defense. Counsel's errors must have been so serious that they deprived the petitioner of a fair trial or appeal. *Id.*

As to the performance prong, Petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's performance is highly deferential. *Id.* at 689. Counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690. Petitioner bears the burden

of overcoming the presumption that the challenged actions were sound trial strategy. *Id*. at 689.

To satisfy the prejudice prong under *Strickland*, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id*. "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *Id*. at 686.

The Supreme Court has confirmed that a federal court's consideration of ineffective-assistance-of-counsel claims arising from state-criminal proceedings is quite limited on habeas review due to the deference accorded trial attorneys and state-appellate courts reviewing their performance. "The standards created by *Strickland* and [section] 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington*, 131 S.Ct. at 788 (internal and end citations omitted). "When [section] 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard. *Id*.

A. Failure to Move for Suppression of Identification Testimony

Petitioner's first claim asserts that his counsel was ineffective for failing to challenge the identification testimony of the two victims, Chenay Cornish and Artist Wright. In particular, Petitioner asserts that he was the only man in the live line-up that had braided hair. The state appellate court rejected the claim on the grounds that a motion to suppress the identification testimony would have been denied, and therefor counsel was not ineffective for failing to file one.

Due process protects a criminal defendant against the introduction of evidence that results from an unreliable identification obtained through unnecessarily suggestive procedures. *Moore v. Illinois*, 434 U.S. 220, 227 (1977). A pre-trial identification procedure violates the Constitution if "the confrontation conducted . . . was so unnecessarily suggestive and conducive to irreparable mistaken identification that [the defendant] was denied due process of law." *Stovall v. Denno*, 388 U.S. 293, 301-02 (1967). In other words, a pre-trial identification violates due process when the pre-trial procedure is so "impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States*, 390 U.S. 377, 384 (1968). If a witness is exposed to an unduly suggestive pre-trial identification procedure, the witness's in-court identification must be suppressed unless the identification has an independent origin untainted by the suggestive pre-trial procedure. *United States v. Wade*, 388 U.S. 218, 241 (1967).

Applying Supreme Court precedent, the United States Court of Appeals for the Sixth Circuit follows a two-step analysis in determining whether an identification is admissible. See *United States v. Crozier*, 259 F.3d 503, 510 (6th Cir. 2001) (citing *Ledbetter v. Edwards*, 35 F.3d 1062, 1070 (6th Cir. 1994)). A court must first determine whether the identification procedure was suggestive. *Id.* If the court finds that the procedure was suggestive, then it must determine whether, under the totality of the circumstances, the identification was nonetheless reliable and therefore admissible. *Id.* To determine reliability, a court considers five factors: "(1) the opportunity to view the perpetrator during the crime; (2) the witness's degree of attention to the perpetrator; (3) the accuracy of the witness's prior descriptions of the perpetrator; (4) the level of certainty demonstrated by the witness when identifying the suspect; and (5) the length of time between the crime and the identification." *Id.* (citing *Neil v. Biggers*, 409 U.S. 188, 199-200 (1972)). "'Against these factors

7

is to be weighed the corrupting effect of the suggestive identification itself.'" *Id.* (quoting *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977)); see also *Carter v. Bell*, 218 F.3d 581, 605 (6th Cir. 2000).

After a review of the record in this case, the Court finds that it was not unreasonable for the state court to find that the pretrial identification procedure was not so unnecessarily suggestive and conducive to irreparable mistaken identification that Petitioner was denied due process of law.

Cornish testified that when the incident occurred, Petitioner was seated in the driver's seat and he had stopped the car only fifteen feet away. There was nothing blocking her view of Petitioner's face, and she could see it through the front passenger window, which was rolled down. She gave a fairly detailed description of the driver. Petitioner was skinny, had a beard, was not wearing a hat, had braids or beads in his hair, and was wearing a white shirt. During the incident Cornish heard the conversation between the gunman who exited the car and Petitioner. Petitioner wanted the other man to put Cornish in the car, but he refused. This conversation directed her attention to Petitioner.

Similarly, Wright testified that he saw Petitioner in the driver's seat as he was being robbed. There was nothing blocking his view. The passenger side window was rolled down, and he was standing about ten feet away from the car. Wright also described Petitioner with some detail. He said Petitioner had braids that went down to the back of his neck, his skin was light brown, and he had a straggly beard along his jaw line. The lineup occurred six days after the incident.

At trial both Cornish and Wright denied that they identified Petitioner because he was the only one with braids in the line-up. Cornish testified that she "remember[ed] seeing his face in the car so [she] knew it was him." Tr. 9/4/09, at 92-93.)

Wright testified as follows:

8

Q: [The braids] assisted you in terms of picking out who the driver was because of that factor, that was the only person that had braids in the lineup that you saw; is that right?

A: No. Because if it was a guy with braids I wouldn't just say it was him because you don't want to put nobody in jail that didn't do it but I knew for sure.

Q: What were you basing it on other than the braids?

A: Because I saw-

Q: I'm sorry. What would you base it on in relation to someone you only saw for two or three seconds other than the fact that he was the only one that had braids in the lineup?

A: Because I saw his face. When I came to the lineup I knew it was him.

Id., at 153.

Accordingly, there was a sufficient basis in the record for the state appellate court to reasonably reject Petitioner's claim. Both witnesses had a good opportunity to view the perpetrator during the relatively short time span when the crime occurred. He was seated in a car that had stopped close-by, and he could be observed in broad day light through an open window. The victims also had their attention drawn towards Petitioner. He was one of the men robbing them. Wright in particular was drawn to the conversation between Petitioner and the gunman about whether she was about to be abducted. The witnesses gave relatively detailed and accurate descriptions of Petitioner to the police. Both witnesses quickly identified Petitioner at the line up and indicated that they were certain. While Petitioner complains that he was the only man with braids, the witnesses indicated that this was not the reason he was selected. Finally, the identification procedure occurred within a week of the crime. Under these circumstances it was reasonable for the state court to reject Petitioner's claim.

9

B. Filing Notice of Alibi Defense

Petitioner next argues that his counsel was ineffective for filing a notice of alibi without ascertaining that he would actually present alibi witnesses. He claims that the filing was prejudicial because it allowed the prosecutor to argue to the trial court that the notice constituted a false exculpatory statement. The Michigan Court of Appeals rejected the claim finding that defense counsel reasonably filed the notice based on the statements Petitioner made to him, and that in any event, Petitioner was not prejudiced.  This determination was reasoanable.

It is true that the filing worked to Petitioner's disadvantage. After counsel filed the notice of alibi, a Detroit police officer interviewed Dominique Wilkins, the person Petitioner claimed to be with on the date of the crime. Wilkins told the officer that she was with Petitioner on January 27, 2009, but not January 28, 2009. After receiving this information from the officer, the prosecutor filed a motion in the trial court to admit the notice of alibi as a "false exculpatory statement by a representative." See *People v. VonEverett*, 402 N.W.2d 773 (Mich. App. 1986). At the hearing on the motion, the trial court denied Petitioner's request to withdraw the notice of alibi, and it granted the prosecutor's motion to admit the notice against Petitioner.

In the state courts, trial counsel asserted that he had spoken with Wilkins prior to filing the notice of alibi, but Petitioner claimed that his attorney never spoke to Wilkins. Petitioner requested an evidentiary hearing to settle this factual dispute, but his motion for a hearing was denied. Notwithstanding this gap in the record, the Michigan Court of Appeals nevertheless reasonably rejected the claim.

While the trial court ruled that it would consider the notice of alibi defense against Petitioner, Wilkins trial testimony was far more damaging. Wilkins testified that Petitioner asked her if she

10

remembered that he was with her on the day of the crime. She responded that he was mistaken about the date, and that they were together the previous day. She testified that he told her to lie and say that she was with him at the time of the crime. Tr. 10/30/09, at 21-23. When she refused to lie for him, Petitioner became mad. Id.  Accordingly, despite the fact that the trial court considered the alibi notice against Petitioner, Wilkins' testimony that Petitioner asked her to lie made the same point in a much more direct fashion. In light of her testimony, as well as the other weighty evidence of Petitioner's guilt, the determination of the Michigan Court of Appeals that the claim was without merit was reasonable.

C. Evidentiary Hearing

Petitioner requests an evidentiary hearing to support his claims. In *Cullen v. Pinholster*, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011), however, the Supreme Court held that where habeas claims had been decided on their merits in state court, as was the case here, a federal court's review under 28 U.S.C. section 2254(d)(1)—whether the state court determination was contrary to or an unreasonable application of established federal law—must be confined to the record that was before the state court. 131 S. Ct. at 1398.  The *Pinholster* Court specifically found that the District Court should not have held an evidentiary hearing regarding Pinholster's claims until after the Court determined that the petition survived review under Section 2254(d)(1). *Id*., at 1398.  Because the state court decision at issue in this case survives Section 2254(d) review based on the existing record, the Court may not hold a hearing on Petitioner's claims.

Certificate of Appealability

Before  Petitioner may appeal this Court's dispositive decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c)(1)(A); Fed. R. App. P. 22(b). A certificate of appealability may

issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a court rejects a habeas claim on the merits, the substantial showing threshold is met if Petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. See *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying that standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.* at 336-37. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll.§ 2254.

Petitioner has not demonstrated a substantial showing of the denial of a constitutional right. Accordingly, a certificate of appealability is not warranted in this case. The Court further concludes that Petitioner should not be granted leave to proceed in forma pauperis on appeal, as any appeal would be frivolous. See Fed. R. App. P. 24(a).

Conclusion

Accordingly, it is ORDERED that the petition for writ of habeas corpus is DENIED.

It is further ORDERED that a certificate of appealability is DENIED.

It is further ORDERED that permission to proceed in forma pauperis on appeal is DENIED.

S/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
United States District Judge

Dated: November 26, 2013